Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison Street, Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, CO 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Pro Hac Vice*

Attorneys for Plaintiff and the alleged Class

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ADRIAN SCOTT RANDLES**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**MR. COOPER GROUP, INC.**, a Delaware corporation, and **NATIONSTAR MORTGAGE, LLC**, d/b/a MR. COOPER, a Delaware limited liability, company,<br><br>Defendants. | Case No. 1:24-cv-177-KES-SKO<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER (DKT. 15)** |

1

# INTRODUCTION

This case challenges Mr. Cooper's violations of the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq.* ("CCPA") in relation to a massive data breach that affected its network in late 2023. Rather than answer for its unlawful conduct, Mr. Cooper moves to transfer the case to Texas.

Specifically, Mr. Cooper posits that the action would be more convenient, less costly, and better serve the interests of justice if it were transferred to Texas and consolidated with a case that **does not even involve a CCPA claim**. Fortunately for Plaintiff, an examination of the relevant factors reveals that a transfer would do little more than shift any potential inconvenience from Mr. Cooper to Plaintiff and the Class, all of whom reside in California. Ultimately, a majority of the factors weigh against transfer. The Court should deny the motion.

Mr. Cooper also makes a related, though separate, argument to transfer this the case to Texas as a function of the "first-to-file" rule. But transfer under the first-to-file doctrine, which is a discretionary matter, is inappropriate here. As an initial matter, there is no overlap. Though the *Cabezas* Complaint features eight (8) separate causes of action, **none** of them are for violations of the CCPA. (*See Cabezas* Complaint, attached hereto as Exhibit A.) So while Mr. Cooper incorrectly warns that "if this case is not transferred, putative class members would face the risk of having similar legal claims, arising from the same events, against the same defendant, proceeding simultaneously in two different courts, creating the risk of conflicting and different rulings" (dkt. 15-1 at 3), in reality there is no such risk. *Cabezas* simply does not involve a CCPA claim, nor do (to the best of Plaintiff's knowledge) any of the other cases which have been consolidated with *Cabezas*. Indeed, so far as Plaintiff is aware, **this** case is the first filed CCPA case against Mr. Cooper in relation to the 2023 breach.

1  Plaintiff has already filed a Motion for Class Certification (Dkt. 9) and is
2  eager to aggressively litigate, in California, this case featuring a single count under
3  a California statute on behalf of a Class comprised solely of California residents.
4  There is no good reason why this case and the Class's claim for statutory damages
5  under the CCPA should be transferred to Texas and consolidated with cases that do
6  not involve CCPA claims. Accordingly, the Court should deny Defendant's motion
7  and permit the present matter to proceed in the Eastern District of California.

## **BACKGROUND**

Mr. Cooper (which was known as Nationstar Mortgage until 2017) is a mortgage lending and loan servicing company. Randles is a Los Banos, California resident who has a mortgage loan which, at some time prior to the data breach, was transferred to and serviced by Mr. Cooper. (*See* Dkt. 1 at ¶¶ 23–24.) While servicing his loan, Mr. Cooper collected sensitive personal information about Randles, including his full name, address, bank account information, and social security number. (*Id.* at ¶ 25.)

Little did Randles know, Mr. Cooper was leaving his information exposed to hackers. That is, on or around December 16, 2023, Randles received a letter from Mr. Cooper notifying him that his personal information was affected by a "data security incident" at Mr. Cooper. (*Id.* at ¶ 26.) The letter specifically confirmed that his name, address, phone number, and social security number were included in the files impacted by the breach. (*Id.* at ¶ 27.)

Despite waiting until mid-December to notify its customers, Mr. Cooper has revealed that its servers were hacked by cybercriminals in October 2023.[1] Mr. Cooper admitted that the breach was extensive, resulting in the theft of "sensitive

---

[1] *Mortgage lender Mr. Cooper admits personal data of millions stolen in October cyberattack*, DELAWARE ONLINE, https://www.delawareonline.com/story/news/crime/2023/12/21/mortgage-company-mr-cooper-hack-class-action-lawsuit/71983257007/ (last visited Feb. 5, 2024.)

3

information belonging to nearly 15 million current and former customers and applicants." (Dkt. 1 at ¶ 3.)

Mr. Cooper's investigation revealed that there was "unauthorized access to certain of [its] systems between October 30, 2023 and November 1, 2023," during which time files containing personal information were exfiltrated and "obtained by an unauthorized party."[2]

Under the CCPA:

> Any consumer whose nonencrypted and nonredacted personal information as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, or whose email address in combination with a password or security question and answer that would permit access to the account, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of a business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:
>
> (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.
>
> (B) Injunctive or declaratory relief.
>
> (C) Any other relief the court deems proper.

CAL. CIV. CODE § 1798.150. The type of information contained in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5 (and thus the subject of this law), includes, among other things, social security numbers.

---

[2] *Mortgage giant Mr. Cooper hit with cyberattack possibly affecting more than 14 million customers*, ABC NEWS, https://abcnews.go.com/Politics/mortgage-giant-mr-cooper-hit-cyberattack-possibly-affecting/story?id=105745061 (last visited Feb. 5, 2024).

4

Randles alleges that his nonencrypted and nonredacted social security number was exfiltrated from Mr. Cooper's network at the time of the breach—his account number and security access code were likely exfiltrated as well. (Dkt. 1 at ¶ 37.) Plaintiff alleges that this unauthorized access and exfiltration, theft, or disclosure is a direct result of Mr. Cooper's violation of its duty to implement and maintain reasonable security procedures and practices. (*Id*. at ¶ 38.) Randles further alleges that Mr. Cooper did not utilize reasonable security procedures or practices for protecting and monitoring sensitive information, including but not limited to encrypting sensitive information, limiting access to servers containing customer personal information, maintaining a secure firewall, monitoring for suspicious, irregular, or unknown traffic, users, or activity within its servers, and assessing vulnerabilities in its system. (*Id*. at ¶ 42.)

On February 27, 2024, Plaintiff filed a Motion for Class Certification, seeking to certify a Class defined as "All persons residing in California whose nonredacted and nonecrypted personal information was compromised in the data breach(es) affecting Mr. Cooper's network(s) in 2023". (Dkt. 9-1 at 2.) Plaintiff, on behalf of himself and the Class seeks: (1) injunctive relief in the form of an order enjoining Defendants from continuing to fail to implement reasonable procedures to protect Plaintiff's and the Class's personal information, and (2) statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident, attorneys' fees and costs, and any other relief the Court deems proper. (Dkt. 1 at ¶ 48.)

## ARGUMENT

**A.    The Ninth Circuit's Eight-Factor Test Under Section 1404 Weighs Against Transfer.**

Mr. Cooper first claims that the Court should transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404. (Def. Mot. at 5-13.) In

reality, the 1404 factors weigh against a transfer and transferring the case would do little more than shift any potential burden of litigating that Mr. Cooper may face to Plaintiff and the Class.

In the interest of justice, district courts may transfer a civil action "'to any other district or division where it might have been brought' for the convenience of the parties and of the witnesses." *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 833 (N.D. Cal. 2018) (citing 28 U.S.C. § 1404(a)). In deciding whether to transfer an action, courts consider the following eight *Jones* factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 833 (N.D. Cal. 2018) (citations omitted). "The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer." *Id.*

Plaintiff takes each factor in turn.

**1.     The location where the agreements were negotiated or executed.**

The first factor, which examines the location where the relevant agreements were negotiated and executed, weighs against a transfer. Plaintiff and each member of the alleged Class are California residents who negotiated and executed mortgage loan agreements with Mr. Cooper (or agreements that Mr. Cooper subsequently acquired from another lender) in California and in relation to California properties.

6

Plaintiff and the Class's relationship with Mr. Cooper has nothing to do with Texas. Rather, they are California residents who purchased properties in California, and in the process entrusted Mr. Cooper with their sensitive personal information. *See Davis v. Prop. & Cas. Ins. Co*, 2005 WL 1694083 (D. Alaska July 14, 2005) ("[T]he insurance contract was negotiated and executed in Wisconsin.")

### 2.     California courts are more familiar with California statutes than Texas courts are.

The second factor asks which state is most familiar with the governing law. As this case involves a single claim under the CCPA, this factor weighs heavily against transferring the case to Texas. *See Lum v. Scitor Corp.*, 2010 WL 1460314, at *2 (N.D. Cal. Apr. 9, 2010) ("While there is no question that the EDVA can interpret California law, courts within this district obviously are more familiar with California's statutory scheme than courts in another jurisdiction."). The same is true here. While a judge in Texas is capable of interpreting a California statute, it cannot seriously be disputed that courts within the Eastern District of California are more familiar with California statutes than a Texas court is.

### 3.     Plaintiff's choice of forum is entitled to deference.

As to the third factor, Mr. Cooper incorrectly claims that "Plaintiff's choice of forum should be given little to no weight." (Def. Mot. at 13.) While it is true that the choice of forum is given "less weight" in the context of class claims, such weight is typically only reduced where this is evidence of forum shopping. *See Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1185 (N.D. Cal. 2010) ("the reduced weight on plaintiff's choice of forum in class actions serves as a guard against the dangers of forum shopping, especially when a representative plaintiff does not reside within the district."); *see also Royal Queentex Enters. v. Sara Lee Corp.*, No. C 99–04787, 2000 WL 246599, at *3 (N.D. Cal. Mar. 1, 2000); *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1059 (N.D.Cal. 2015).

7

There is no evidence whatsoever that Plaintiff has engaged in forum shopping here. To the contrary, Plaintiff is a California resident seeking to represent a Class of other California residents to recover under a California statute. As such, a considerable portion of the operative facts occurred in this District, and there is nothing unfair or unreasonable about Mr. Cooper being required to answer for harms it caused to California residents under a California law in a California court. This factor thus weighs against transfer.

### 4. The respective parties' contacts with the forum.

The fourth factor, which looks to the respective parties' contacts with the forum, also weighs against a transfer. Plaintiff and the members of the alleged Class are all residents of California with no ties to Texas. Mr. Cooper, on the other hand, conducts extensive business in California and services mortgage loans for properties in California. Mr. Cooper's choice to solicit business in California constitutes sufficient contacts to render the forum convenient. *See, e.g., In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1080 (S.D. Cal. 2011) (finding that the Defendant's sale of its products nationwide establishes "general contacts with the forum" and therefore "it is reasonable to assume that this forum is convenient.").

### 5. The contacts relating to Plaintiff's cause of action.

While Mr. Cooper cites the location of its technology and operations as a basis for finding the contacts relate closely to Texas, it pays short shrift to the fact that each Class member is in California and that Mr. Cooper's relationship with each Class member involves contracts that Mr. Cooper entered into with California residents to service mortgage loans for California properties. Hence, this factor also weighs against a transfer, or is at least neutral.

### 6. The differences in the costs of litigation in the two forums.

The reality is that a transfer would only shift any potential cost burden from

Mr. Cooper to Plaintiff and the Class.

Typically, "courts disfavor transferring venue when litigation costs are not significantly reduced." *Ahead, LLC v. KASC, Inc.*, No. C13-0187JLR, 2013 WL 1747765, at *12 (W.D. Wash. Apr. 23, 2013). Additionally, "[c]ourts do not order venue transfers when doing so would simply 'transfer the burden of litigation from Defendant to Plaintiff.'" *Vanvakaris v. Fashion Forms, Inc.*, No. CV197765DMGJEMX, 2020 WL 5044470, at *3 (C.D. Cal. Apr. 29, 2020); *see also Holliday v. Lifestyle Lift, Inc.*, No. C 09-4995 RS, 2010 WL 3910143, at *8 (N.D. Cal. Oct. 5, 2010) ("While it is of course true that litigation and trial in California will burden the defendants, transfer would likely only displace this burden—or, worse, impose a headier one—onto plaintiff."). Moreover, "corporations are better-equipped than individuals to absorb increased litigation costs." *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011).

Here, Mr. Cooper fails to identify any costs that would be significantly reduced. Instead, Mr. Cooper merely recites the location of its technology, witnesses, and documents. (Def. Mot. at 9.) But modern technology renders these concerns virtually nonexistent. *See O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 2009 WL 4899217, at *2 (N.D. Cal. Dec. 11, 2009) ("Defendants assert that most of the relevant documents are located in or near the Southern District of Indiana. The Court gives this argument little weight because modern technology has significantly reduced the costs associated with the transfer of documents."); *C.H. Robinson Co. v. Glob. Fresh, Inc.*, No. CV 08-2002-PHX-SRB, 2009 WL 10673422, at *9 (D. Ariz. Mar. 20, 2009) ("modern communication methods, electronic discovery and document production, and low-cost airfare between southern California and Arizona should minimize litigation costs.").

Moreover, given Plaintiff's lead counsel's location (Denver, Colorado), he

9

will be required to travel for any in-person depositions regardless of the forum. Consequently, Plaintiff will agree to depose Mr. Cooper and all of its employees and witnesses in Texas to decrease any potential burden. And to the extent that inspections of Mr. Cooper's technology are necessary, those inspections can be readily completed wherever the system(s) may be located. Finally, though Mr. Cooper complains that its witnesses would need to travel to California for trial if the case *is not* transferred, Plaintiff would need to travel to Texas for trial if the case *is* transferred. Put simply, Mr. Cooper's motion does little more than seek to transfer the litigation burden from itself to Plaintiff.

In the end, "a defendant seeking transfer must 'make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.'" *Zilveti v. Glob. Mktg. Rsch. Servs., Inc.*, No. C-15-2494 MMC, 2016 WL 613010, at *2 (N.D. Cal. Feb. 16, 2016). Mr. Cooper has failed to make any such showing. Thus, this factor weighs against transfer.

### 7. The availability of compulsory process to compel attendance of unwilling non-party witnesses.

The seventh factor also weighs against a transfer, or at least is neutral. Mr. Cooper has not identified any non-party witnesses it wishes to compel attendance and who reside in Texas. Indeed, "[t]o demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance." *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1049 (N.D. Cal. 2001); *see also Pinnacle Fitness & Recreation Mgmt., LLC v. Jerry & Vickie Moyes Fam. Tr.*, No. 08-CV-1368 W (POR), 2009 WL 10664872, at *9 (S.D. Cal. Sept. 8, 2009) ("to establish inconvenience of witnesses, Moyes Trust must not only state the name of witnesses, but their location, and explain the substance of their testimony and its relevance.").

Even if Mr. Cooper could identify any potential witnesses, this does not pose

a serious problem. The parties can easily depose any hypothetical witnesses within 100 miles of their residence and then offer the deposition testimony at trial. *See Nortek Prod. (Taichang) Ltd. v. FAIP N. Am., Inc.*, No. C-10-0810 MMC, 2010 WL 1838934, at *3 (N.D. Cal. May 4, 2010) ("[Defendant] does not contend that any such non-party witness would refuse to testify at a trial in California, nor does [defendant] explain why any such witness's testimony could not be taken at a deposition and offered at trial." (citing Fed. R. Civ. P. 32(a))); *see also C.H. Robinson Co. v. Glob. Fresh, Inc.*, No. CV 08-2002-PHX-SRB, 2009 WL 10673422, at *9 (D. Ariz. Mar. 20, 2009) ("the Court's lack of subpoena power can be solved through the use of deposition testimony or video conference.").

Because Mr. Cooper has not identified a single witness whose testimony may be unable to be compelled, this factor weighs against a transfer.

### 8. The ease of access to sources of proof.

Lastly, "[t]he location of evidence may be an important factor in a convenience and fairness analysis." *Martin v. Glob. Tel*Link Corp.*, 2015 WL 2124379, at *5 (N.D. Cal. May 6, 2015) (citation omitted). "However, this factor is neutral or carries only minimal weight when the evidence is in electronic form." *Id.* (citing *Sarinara v. DS Waters of Am. Inc.*, No. C–13–0905 EMC, 2013 WL 3456687, at *2 (N.D. Cal. July 9, 2013); *Friends of Scot., Inc. v. Carroll*, No. C–12–1255 WHA, 2013 WL 1192956, at *3 (N.D. Cal. Mar. 22, 2013)).

In this case, there is likely to be no difference in the access to sources of proof. The bulk of responsive documents will undoubtedly be in electronic form. Consequently, the transfer of most, if not all, discovery documents will take place via email or by electronic file transfer. Even for those few pieces of evidence that are not in electronic form, the parties can work to conduct any potential inspection(s) of any physical evidence wherever it may be located. This factor

argues against transfer or is neutral.

### 9. The Public Interest Weighs Against Transfer.

As a final consideration, the Eastern District of California has a strong interest in protecting California citizens from conduct that is unlawful under a California privacy statute. *See Smith v. Nerium Int'l, LLC*, No. SACV1801088JVSPLAX, 2019 WL 3110027, at *8 (C.D. Cal. Apr. 3, 2019) ("California has an interest in protecting its citizens from the alleged harm"); *Samson Tug & Barge Co. v. Koziol*, 869 F. Supp. 2d 1001, 1019 (D. Alaska 2012) ("This court finds that Alaska's interest in protecting its citizens from fraud and misrepresentation."); *Walker v. Los Angeles Cty.*, No. 08-0878-PHX-JAT, 2008 WL 4447011, at *8 (D. Ariz. Oct. 1, 2008) ("Plaintiff correctly notes that Arizona has an interest in protecting its citizens."). Texas, on the other hand, has no interest in protecting California citizens. This, too, weighs against a transfer.

### B. The First-to-File Doctrine

As an alternative argument, Mr. Cooper argues that the case should be transferred to the Northern District of Texas under the first-to-file rule. (Dkt. 15-1, 13-16.) The "first-to-file" rule is a doctrine of federal comity that "permits" a district court to decline jurisdiction over an action if "a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982); *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1146 (E.D. Cal. 2010) (quoting *Pacesetter*). "The most basic aspect of the first-to-file rule is that it is discretionary . . ." *Alltrade, Inc. v. Uniweld Product, Inc.*, 946 F.2d 622 (9th Cir. 1991). Courts may choose to dispense with the rule for reasons of equity: it is "not a rigid or inflexible rule to be mechanically applied". *Id.*; *Pacesetter*, 678 F.2d at 95.

1    The three factors analyzed when considering application of the first-to-file
2 principle are: (1) the chronology of the actions; (2) similarity of the parties; and (3)
3 similarity of the issues. *Bashiri v. Sadler*, No. CV 07-2268-PHX-JAT, 2008 WL
4 2561910, at *1 (D. Ariz. June 25, 2008); *Adoma*, 711 F. Supp. 2d at 1146 (citing
5 *Alltrade*, 946 F.2d at 625–26).

6    With regard to the first factor, chronology, Plaintiff does not dispute that
7 *Cabezas* was filed first. However, this makes little difference, as discussed more
8 fully below, since *Cabezas* does not involve a CCPA claim. (*See* Ex. A.)

9    The second factor, similarity of parties, weighs in Plaintiff's favor. While
10 this factor does not require strict identity, the parties must be "substantially
11 similar." *Adoma*, 711 F. Supp. 2d, at 1147. In traditional cases, this standard
12 prevents parties from unnecessarily adding a party to a case arising from the same
13 transaction in order to defeat similarity. *See Bashiri*, 2008 WL 2561910, at *2. In
14 class actions, however, the analysis changes—it is the classes, rather than the
15 named representatives, that are compared. *Adoma*, 711 F. Supp. 2d at 1147; *Red v.*
16 *Unilever U.S., Inc.*, 2010 WL 11515197, at *4 (C.D. Cal. Jan. 25, 2010).

17    As a preliminary consideration, some courts have adopted the approach that
18 comparison of the classes is not appropriate until a class has been certified. *See*
19 *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1295 (N.D. Cal.
20 2013) (citing *Lac Anh Le v. PricewaterhouseCoopers LLP*, No. C-07-5476 MMC,
21 2008 WL 618938, at *1 (N.D. Cal. Mar. 4, 2008)); *Hill v. Robert's Am. Gourmet*
22 *Food, LLC*, No. 13-cv-00696-YGR, 2013 WL 3476801, at *3 (N.D. Cal. July 10,
23 2013) (same). This standard recognizes the uncertainty of class membership and
24 the malleability of class definitions, which often change after appropriate
25 discovery. Under such an approach, Mr. Cooper's motion would be premature—

and similarity would not be found—because class certification has not yet occurred in either case (though Plaintiff again notes that he has moved for it).

The more widely-accepted approach is that proposed classes may be compared for similarity before certification occurs. *See, e.g.*, *Adoma*, 711 F. Supp. 2d at 1147–48; *Hill*, 2013 WL 3476801, at *3. However, even if compared now, Plaintiff's proposed Class is not substantially-similar to warrant transfer of his case. The Class Plaintiff seeks to certify is narrowly-tailored to the question of CCPA liability and is defined as "all persons residing in California whose nonredacted and nonecrypted personal information was compromised in the data breach(es) affecting Mr. Cooper's network(s) in 2023)." *Cabezas*'s proposed definition, on the other hand, is overly broad, vague, and not tailored to a CCPA claim (likely because, again, a CCPA claim isn't at issue in that case). There, the proposed class definition is "all ascertainable persons impacted by the data breach, including all who were sent a notice of the data breach." (See Ex. A.) Though there may be overlap, the proposed classes are not substantially similar.

The third factor, similarity of issues, is likewise not satisfied. *Cabezas* pleads eight (8) separate claims for relief: (1) Negligence, (2) Negligence Per Se, (3) Breach of Express Contract, (4) Breach of Implied Contract In Fact, (5) Invasion of Privacy, (6) Unjust Enrichment, (7) Breach of Confidence, and (8) Breach of Fiduciary Duty. (*See* Ex. A.) But not a claim for violating the California Consumer Privacy Act, which is the only claim at issue in this case.

Indeed, to the best of Plaintiff's knowledge *his case* is the first-filed CCPA case. In fact, though Defendant states that three (3) cases involving California plaintiffs have already been consolidated with *Cabezas* (*Borge*, *Granados*, and *LaPertche* (dkt. 15-1 at 15), none of those three cases brings CCPA claims, either. (*See* Group Exhibit B, "Complaints in *Borge*, *Granados*, and *LaPertche*") To the

14

extent Mr. Cooper argues that it is possible for an amended Complaint in *Cabezas* to add a CCPA claim, such a hypothetical attempt would fail due to the CCPA's pre-suit notice requirement:

> The Court finds that Ranson failed to allege that he provided notice as required by the California CPA. In analogous circumstances, courts have held that the objective of a "pre-suit notice," such as the requirement here, is "to allow the defendant an opportunity to cure the defect outside of court." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 875 (N.D. Cal. 2015). The 30-day notice required by the California CPA serves the same purpose. If a notice filed before the 30-day deadline could be updated when an amended complaint is filed and satisfy the 30-day notice requirement, then having the pre-suit notice requirement would be pointless. Ranson alleges that he gave notice on December 8, 2020, three days before filing his California CPA claim. (Doc. 41-1; *see* Doc. 30.) He cannot supplement the time between the notice and the initiation of the lawsuit by amending his complaint. Clearly, he failed to satisfy the 30-day notice requirement. The California CPA claim is dismissed with prejudice.

*Griffey v. Magellan Health Inc.*, No. CV-20-01282-PHX-MTL, 2022 WL 1811165, at *6 (D. Ariz. June 2, 2022). Thus, this case would remain the operative first-filed CCPA claim even if one of the Texas cases attempted to amend to add the claim later.

At the end of the day, though it is true that each of these cases stems from the same data breach incident, the claims do not overlap. This case involves a single claim under the CCPA on behalf of a Class comprised solely of California residents. On the other hand, *Cabezas* and the cases consolidated with it involve various claims other than a CCPA claim and their proposed classes are not limited to California residents. There simply is nothing inconsistent about letting this case proceed independently in California on its CCPA claim while *Cabezas* proceeds on

15

its nationwide common law claims. As a result, Mr. Cooper's motion should be denied.

## **CONCLUSION**

Mr. Cooper's motion to transfer this case to the Northern District of Texas should be denied. Plaintiff and the members of the Class are California residents wishing to proceed in a California court in a case involving a single claim for Mr. Cooper's violations of a California statute. There is no reason to send them to Texas to be relegated to a subclass in a broader, more complicated, unrelated nationwide case which only involves common law theories of liability. Plaintiff has moved for class certification already and is ready, willing, and able to litigate this case swiftly and aggressively at home in California. The Court should deny Mr. Cooper's Motion to Transfer, grant Plaintiff's Motion for Class Certification, and schedule a case management conference to discuss a notice plan for class members and dates for discovery and summary judgment.

Respectfully submitted,

Dated: March 27, 2024

Adrian Scott Randles, individually and on behalf of all others similarly situated,

By: /s/ Patrick H. Peluso
One of Plaintiff's Attorneys

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809
Attorneys for Plaintiff and the Class
* *Pro Hac Vice*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2024, a true and correct copy of the above papers was served upon counsel of record by filing such papers via the Court's CM/ECF system.

/s/ Patrick H. Peluso